1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5   SCOTT KANVICK,                                  )

                    Plaintiff,                      )          3:08-CV-00397-ECR-VPC

6                                                   )

7       vs.                                         )          **REPORT AND RECOMMENDATION**
                                                    )          **OF U.S. MAGISTRATE JUDGE**

8   STATE OF NEVADA, *et al.*,                      )
                                                    )
                    Defendants.                     )          April 26, 2010

9   _____)

10

11          This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United

12   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

13   U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for partial summary

14   judgment (#s 39, 42 (errata), 53 (*sealed exhibits*)).  Plaintiff opposed defendants' motion for partial

15   summary judgment (#s 48, 55 (supplement)), and defendants replied (#s 49, 56 (supplement)).  The

16   court recommends that defendants' motion for partial summary judgement (#39) be granted.

17                        **I.  HISTORY & PROCEDURAL BACKGROUND**

18          Plaintiff Scott Kanvick ("plaintiff"), a *pro se* litigant, is currently on parole (#122).  Plaintiff

19   brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of the U.S. Constitution and

20   federal law, which allegedly occurred during his incarceration at Nevada State Prison ("NSP") and

21   at Ely State Prison ("ESP") (#1-1, p. 2).  Plaintiff originally filed his civil action in state court on

22   June 4, 2008, alleging thirteen counts of civil rights violations (#1).  Defendants removed the case

23   to federal court on July 21, 2008, pursuant to 28 U.S.C. §§ 1441, 1443.  *Id.*  After initial screening,

24   the court dismissed counts IV, V, VI, VIII, X, and XI for plaintiff's failure to state a claim upon

25   which relief could be granted (#9).[1]  Current defendants are the State of Nevada; E.K. McDaniel,

26   ESP Warden; Howard Skolnik, NDOC Director; Mark Drain, ESP Correctional Caseworker

27   _____

28          [1]      The screening order dismissed defendants Wong, Peterson, Tilley, and Adamson.

1   Specialist II; Christina Tripp, Correctional Caseworker Specialist I at Ely Conservation Camp;

2   Bobby Kopp, ESP Correctional Officer; Bruce Bannister, NDOC Medical Director; Alois Hanke,

3   NSP Correctional Officer; Joy Trushenski, ESP Correctional Caseworker Specialist II; Elizabeth

4   Walsh, Northern Nevada Correction Center Caseworker; Rex Reed, NDOC Chief of Classification

5   and Planning; Bill Donat, (former) NSP Warden; Delmar Snider, NDOC medical doctor; and Mike

6   Cruse, Senior Correctional Officer (#39, p. 4; 1-1, p. 4).

7        Plaintiff's claims arise from distinct sets of facts as set forth within each count; therefore, the

8   court describes the facts within each of the counts.

9        In count I, plaintiff alleges that defendants Hanke and Cruse "locked inmates [including

10  plaintiff] in a dorm, outside exigent circumstances, to deprive them of restroom facilities" (#1, p. 7).[2]

11  Defendants Hanke and Cruse allegedly denied plaintiff access to a restroom for "extended periods

12  of time" while they performed a "count" procedure where prison officials counted the inmates in the

13  institution (#1-1, p. 8). The evidence, as set forth by defendants, reveals six separate incidents where

14  plaintiff as well as others in the dormitory were temporarily denied access to the restroom (#39, pp.

15  4-6).[3] The longest period of time without access to a proper toilet was two hours.

16       Plaintiff also alleges in count I that defendant Scott, after receiving numerous grievances

17  from plaintiff and others regarding the inaccessibility of the restroom, "sought a personal vendetta

18  against those whom (sic) 'complained' against him by pointing out those inmates living in the dorm

19  to other officers" (#1-1, p. 8). Over a period of two weeks, defendant Scott twice inspected the

20  dormitory and plaintiff's cell (#39, p. 6). Defendant Scott found that plaintiff possessed property not

21  properly registered to plaintiff. *Id.* p. 7. Prison officials filed charges against plaintiff for violating

22  prison rules, which prohibit inmates from possessing property not registered to the inmate. *Id.*

23  Plaintiff argues that defendant Scott did not conduct inspections of the entire prison population but

24  rather "solely implemented searching dorm inmates (sic) property." *Id.*

25

26       [2]   At ESP, plaintiff was housed in the "dormitory" or "dorm," which was considered "Level One, Preferred Housing" (#1-1, p. 7).

27       [3]   Defendants argue that only two of these incidents are at issue. Four of the incidents
28  uncovered in discovery have not been formally grieved by plaintiff. The other incident is one that defendants seek to include for "context."

1        In count III, plaintiff asserts that defendants Snider and Bannister failed to treat his back

2   injury (#1-1, pp. 10-11).  Plaintiff indicates that he has "concurring atrophy in both leg muscles,

3   involuntary contractions, twitching, loss of motor control and consistent pain from sciatic nerves

4   causing cramping and limited range of movement."  *Id.* p. 10.  Plaintiff maintains that he "should

5   have immediately been seen by a specialist promptly, given physical therapy, consistent medication,

6   and M.R.I., no restriction in programs, a day pass to the gym (or regular access to rehabilitative

7   exercise equipment) and an air mattress."  *Id.*  Plaintiff brings this claim under the Eighth

8   Amendment and the Americans with Disabilities Act.  *Id.*

9        In count VII, plaintiff alleges that the NDOC policy of prohibiting of typewriters

10  implemented by defendant Skolnik renders litigation more difficult and thereby deprives him of a

11  protected liberty interest in continuing his litigation activities.  *Id.* pp. 16-17.  Plaintiff also alleges

12  that the confiscation without notice constitutes a deprivation of a property interest in violation of the

13  due process clause.  Plaintiff also alleges that the confiscation of typewriters was in retaliation for

14  inmates' litigation activities.

15       In count XIII, plaintiff alleges that defendants Drain, Tripp, and Reed violated his due

16  process rights by denying him opportunity to participate in a rehabilitative program.  *Id.* pp. 26-27.

17       The court notes that the plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff

18  appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

19  of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

20  *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

21                          **II.  DISCUSSION & ANALYSIS**

22  **A.     Discussion**

23          **1.      Summary Judgment Standard**

24       Summary judgment allows courts to avoid unnecessary trials where no material factual

25  disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

26  The court grants summary judgment if no genuine issues of material fact remain in dispute and the

27  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In deciding whether

28  to grant summary judgment, the court must view all evidence and any inferences arising from the

evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## 2.    Rule 56(f)

Under Rule 56(f), if a party opposing a motion for summary judgment can show by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may deny the motion [or] order a continuance to enable [further discovery]." Fed. R. Civ. P. 56(f)(1) -(2). The rule assures diligent litigants an opportunity to for fair discovery. However, where a party has not been diligent in pursuing discovery, a court is unlikely to grant such a request. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The party seeking a continuance of discovery must show "(1) that [he has] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *California v. Campbell*, 138 F.3d 772, 779

4

(9th Cir.1998). "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986).

Plaintiff argues that he is unable to answer the instant motion (#s 48, 55). Although it appears that plaintiff seeks to continue discovery, his request is substantively and procedurally deficient. Rather than list specific reasons for his failure to put forth evidence, plaintiff questions the veracity of defendants' exhibits, explains that he did not have access to a law library, and impugns the motives of defense counsel (#48) ("[Defense cousel] Geddes and his staff, have use the Denial (sic) of law library access to the Plaintiff as a tactic and to their advantage, knowing plaintiff could not file for a request for Discovery (sic) timely."). Moreover, plaintiff fails to set any forth any facts in the form of an affidavit. This court's scheduling order marked August 3, 2009, as the close of discovery (#22), and plaintiff had sufficient time to raise any issues concerning defendants alleged failure to produce, yet he took no such action. Therefore, the court denies plaintiff's requests to continue discovery and now rules on the instant motion.

### 3.    Local Rules of Practice

#### a.    Rule 7-2(d)

Local rules are "laws of the United States." *United States v. Hvass*, 355 U.S. 570, 575 (1958). Courts must construe the local rules so that they do not conflict with the federal rules. LR IA 2-1; *see Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995). District of Nevada Local Rule 7-2(d) provides that "[t]he failure of an opposing party to file points and authorities in support of the motion shall constitute a consent to the granting of the motion." LR 7-2(d).

Although LR 7-2(d) allows a court to grant a motion by virtue of a non-responsive party's consent, a district court may not grant an unopposed motion for summary judgment solely because the opposing party has failed to file an opposition. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] non-moving party's failure to comply with the local rules does not excuse the moving party's affirmative duty to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). Defendants cite *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995), for support that this court may apply the local rule to grant the instant

1  motion; however, *Ghazali* applied the local rule to grant dismissal, not summary judgment, and the

2  court clearly noted the difference.  *See Ghazali*, 46 F.3d at 54.

3       In sum, defendants must meet their burden as the moving party, and their moving papers

4  must be sufficient to support a grant of summary judgment.  *See Martinez*, 323 F.3d at 1183.

5  Although plaintiff submits no evidence to dispute defendants' motion, the court may returns to any

6  facts set forth in plaintiff's complaint because "[a] verified complaint may be treated as an affidavit

7  to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth

8  specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996)

9  (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n. 1 (9th Cir.1987) (per curiam)).

10 **B.    Analysis**

11      In the face of plaintiff's failure to comply with the local rules concerning the filing of points

12 and authorities, the court must determine whether defendants have met their burden as the moving

13 party under each of the claims.  Defendants must inform the court of the basis for their motion and

14 submit evidence which demonstrates the absence of any genuine issue of material fact.  *Celotex*

15 *Corp.*, 477 U.S. at 323.

16      **1.    Count I**

17      In count I, plaintiff alleges numerous constitutional violations.  With respect to his temporary

18 deprivation of restroom access, plaintiff first alleges that such deprivations constitute "cruel and

19 unusual punishment" under the Eighth Amendment.  Plaintiff then argues that such punishment has

20 been instituted without proper procedural protection in violation of his due process rights.  Plaintiff

21 also alleges that defendants searched his property and charged him with violations of prison

22 regulations in retaliation for filing grievances.  Defendants move for summary judgment on

23 plaintiff's Eighth Amendment, due process, equal protection, and retaliation claims.

24      **a.    Eighth Amendment**

25      The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a

26 crime.  U.S. Const. amend. VIII.  The plaintiff must make two showings when he or she challenges

27 the conditions of confinement. First, the plaintiff must make an "objective" showing that the

28 deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. *See*

1   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the plaintiff must make a "subjective" showing

2   that the prison official acted "with a sufficiently culpable state of mind." *Id.*

3        "Deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently

4   grave to form the basis of an Eighth Amendment violation." *Id.* (quoting *Rhodes v. Chapman*, 452

5   U.S. 337, 347 (1981)).  Prison officials have a duty to ensure that prisoners are provided adequate

6   shelter, food, clothing, sanitation, medical care, and personal safety. *Keenan v. Hall*, 83 F.3d 1083,

7   1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982).  The circumstances,

8   nature, and duration of a deprivation of these necessities must be considered in determining whether

9   a constitutional violation has occurred.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)

10  (precluding summary judgment where prison officials wholly restricted inmates access to toilets for

11  an entire night, resulting in inmates soiling themselves).

12       "Subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an

13  infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45

14  F.3d 1310, 1314.  In *Anderson*, plaintiffs sought to enjoin defendant from the use of a "safety cell"

15  for suicidal and mentally disturbed inmates, complaining about the state of the cell's sanitation. *Id.*

16   In affirming the district court's dismissal, the court explained that "[t]he plaintiffs here have not

17  shown . . . that the sanitary limitations imposed upon them were more than temporary." *Id.* at 1316.

18  Courts outside of this circuit have likewise held that a temporary deprivation of access to toilets, in

19  the absence of physical harm or a serious risk of contamination, does not rise to the level of an

20  Eighth Amendment violation. *See, e.g., Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004); *see*

21  *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) (holding that defendants' being required to

22  urinate occasionally in their cells when officers were unavailable to take them to the toilet did not

23  violate the Eighth Amendment).

24       The court does not doubt that proper disposal of one's bodily waste constitutes a basic human

25  need.  However, here, the nature, circumstances, and duration of the deprivation does not amount

26  to anything more than an inconvenience.  Although plaintiff alleges that his detention amounted to

27  "extended periods of time," the facts evidence that plaintiff was only temporarily denied access to

28  a proper toilet (#1-1, p. 8; #39, pp. 4-6).   Plaintiff presents no evidence that any risk of substantial

1    harm existed, much less that defendants Hanke or Cruse knew of such a risk and disregarded it.

2          Therefore, defendants meet their burden of demonstrating an absence of any genuine issue

3    of material fact, and the court should grant summary judgment on this claim.

4                    **b.     Due Process**

5          Plaintiff brings his claim under the Due Process Clause of the Fifth Amendment. "The Due

6    Process Clause of the Fifth Amendment and the equal protection component thereof apply only to

7    actions of the federal government-not to those of state or local governments." *Lee v. City of Los*

8    *Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).

9    Plaintiff does not allege that any of the defendants are federal actors. Accordingly, we hold that

10   plaintiff has failed to state a claim alleging a violation of the Fifth Amendment.

11         However, the court construes his allegations of due process violations under the Fourteenth

12   Amendment because as long as the defendant "receives notice of what is at issue in the case," there

13   is no need to specifically identify the statutory or constitutional source of the claim raised. *See*

14   *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004). Since defendants themselves address the

15   merits of plaintiff's claim under the Fourteenth Amendment, the court proceeds to do the same.

16         The Fourteenth Amendment prohibits any state from depriving any person of life, liberty or

17   property without due process of law. U.S. Const. amend. XIV, § 1. To state a claim for deprivation

18   of procedural due process, a plaintiff must first establish the existence of a constitutionally protected

19   interest. Once a plaintiff has met the threshold requirement of pleading a constitutionally protected

20   interest, the court then proceeds to analyze the amount of process due. *Wolff v. McDonnell*, 418 U.S.

21   539 (1974). As discussed below, plaintiff here does not demonstrate any facts to suggest that

22   temporary restraint from bathroom access rises to the level of a constitutionally protected interest.

23         Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v.*

24   *Helms*, 459 U.S. 460, 466-68 (1983). "[A] liberty interest in avoiding particular conditions of

25   confinement may arise from state policies or regulations, subject to the important limitations set forth

26   in *Sandin* . . . ." *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). *Sandin v. Conner*, 515 U.S. 472,

27   484 (1995), held that those liberty interests created by prison regulations or by state law are limited

28   to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation

1    to the ordinary incidents of prison life."

2        Under *Sandin*, a factual comparison must be made, "examining the hardship caused by the

3    prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v.*

4    *Carey*, 353 F.3d 750, 755 (9th Cir. 2003). Courts consider three factors in undertaking this analysis:

5    (1) the prisoner's conditions of confinement; (2) the duration of the sanction; and (3) whether the

6    sanctions will affect the length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078

7    (9th Cir. 2003).

8        Here, plaintiff claims a liberty interest in freedom from temporary detention without access

9    to a proper toilet. In light of the factors in *Serrano*, plaintiff attests that the conditions of

10   confinement were such that he lacked access to a proper toilet (#1-1, pp. 7-8). Second, the evidence,

11   as presented by defendants, demonstrates that the duration of the condition was temporary. Inmates

12   were only prevented from accessing the toilet during the "count" procedure, which the evidence

13   demonstrates lasted no more than two and one-half hours (#39, pp. 4-6). Third, plaintiff's

14   temporary placement in his cell did not affect the length of his sentence. Defendants present

15   sufficient evidence that plaintiff cannot demonstrate a constitutionally protected liberty interest.

16   Therefore, summary judgment is proper on plaintiff's due process claim.

17                     **c.    Equal Protection**

18       The Fourteenth Amendment's Equal Protection Clause "directs that 'all persons similarly

19   circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982). To prove his Equal

20   Protection rights were violated, plaintiff must show either (1) the defendants acted with an intent or

21   purpose to discriminate against him based upon membership in a protected class, *Thornton v. City*

22   *of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), or (2) he was treated differently from similarly

23   situated individuals, and there was no rational basis for the difference in treatment, *Village of*

24   *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

25       Here, defendants maintain that plaintiff cannot demonstrate any factual issue as to whether

26   defendants acted with intent or purpose to discriminate against him based on his membership in a

27   protected class (#39, p. 22). Plaintiff alleges that defendants "solely implemented searching dorm

28   inmates (sic) property" (#1-1, p. 8). Plaintiff does not produce any facts to demonstrate that

1   defendants acted with intent or purpose to discriminate or that defendants' actions lacked a rational
2   basis. Nor does plaintiff demonstrate how or why dorm inmates would represent a protected class.
3   Therefore, no genuine issues of material fact exist as to plaintiff's equal protection claim, and
4   summary judgment is proper.

5               **d.      Retaliation**

6       "A prison inmate retains those First Amendment rights that are not inconsistent with his
7   status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v.*
8   *Procunier*, 417 U.S. 817, 822 (1974). "Of fundamental import to prisoners are their First
9   Amendment 'rights to file prison grievances . . .'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir.
10  2005) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)). "Because purely retaliatory
11  actions taken against a prisoner for having exercised those rights necessarily undermines those
12  protections, such actions violate the Constitution quite apart from any underlying misconduct they
13  are designed to shield." *Id.* "Within the prison context, a viable claim of First Amendment
14  retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action
15  against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled
16  the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance
17  a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. The plaintiff must demonstrate that the
18  state "impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson*,
19  778 F.2d 527, 531 (9th Cir. 1985). "The plaintiff bears the burden of pleading and proving the
20  absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland*,
21  65 F.3d 802, 806 (9th Cir. 1995).

22      Here, defendants argue that plaintiff cannot demonstrate that defendants committed an
23  "adverse act" (#39, pp. 17-18). Plaintiff does not present any fact to demonstrate that defendants
24  Scott and Hanke's "compliance check" and subsequent notice of charges was "adverse" or "did not
25  advance a legitimate correctional goal." Moreover, in the context of retaliation claims in prison, this
26  court recognizes that it should "afford appropriate deference and flexibility" to prison officials in the
27  evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*,
28  65 F.3d at 807. Without any factual issue as to these essential elements of a retaliation claim, no

1    reasonable jury could find that defendants' acts of searching plaintiff's cell and charging him with
2    violation prison regulations violated plaintiff's First Amendment rights.

3          Therefore, the court grants summary judgment on all claims in count I of plaintiff's
4    complaint.[4]

5          **2.      Count III**

6          Plaintiff alleges that defendants Snider and Bannister violated his Eighth Amendment rights
7    as well as his rights under the Americans with Disabilities Act by failing to properly treat and
8    accommodate his injured back.  Defendants move for summary judgment on the Eighth Amendment
9    claim (#39, p. 23).

10          A prisoner's claim of inadequate medical care arises under the Eighth Amendment.  The
11    unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by
12    the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To prevail on an action
13    alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard – that
14    the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective
15    standard – deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson*
16    *v. Seiter*, 501 U.S. 294, 297-304 (1991).  A prison official violates the Eighth Amendment when he
17    responds with deliberate indifference to an inmate's serious medical need.  *Farmer*, 511 U.S. at 834.

18          The objective requirement of a "serious medical need" is met if the failure to treat a
19    prisoner's condition could result in further significant injury or the "unnecessary and wanton
20    infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*,
21    429 U.S. 97, 104 (1976)).  In this circuit, examples of serious medical needs include "the existence
22    of an injury that a reasonable doctor or patient would find important and worthy of comment or
23    treatment; the presence of a medical condition that significantly affects an individual's daily
24    activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131
25    (9th Cir. 2000) (citations omitted).

26

27    _____

28          [4]      Because the court finds that defendants have met their burden, the court need not turn to
       qualified immunity issues.

1   The subjective standard of deliberate indifference requires "'more than ordinary lack of due
2   care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835, (quoting *Whitley v. Albers*, 475
3   U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence
4   at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference,
5   plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical
6   treatment or that the way prison staff provided medical care indicates deliberate indifference, and
7   that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d
8   390, 394 (9th Cir. 1988). Prison medical staff do not violate the Eighth Amendment simply because
9   their opinion concerning medical treatment conflicts with the opinion of the inmate-patient.
10  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Moreover, "mere delay of surgery,
11  without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd.*
12  *of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *accord McGuckin v.*
13  *Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

14  In this case, defendants argue that no evidence exists to demonstrate that defendants were
15  deliberately indifferent (#39, p. 23). Defendants produce plaintiff's medical records, authenticated
16  by the designated custodian of records for the NDOC Medical Division (#53 (*sealed*)). The records
17  themselves demonstrate that numerous physicians and nurses examined plaintiff regarding his back
18  injury. Defendant Snider examined plaintiff in December 2005, twice in March 2006, November
19  2006, July 2007, December 2007 (#53-1, pp. 5-7) (plaintiff's medical progress notes). *Id.* These
20  were not the only medical visits; other NDOC doctors and nurses examined plaintiff as well.
21  Plaintiff does not produce evidence to demonstrate that defendants Snider or Bannister purposely
22  denied or delay medical treatment. Therefore, summary judgment is proper on plaintiff's Eighth
23  Amendment claim for deliberate indifference to serious medical needs.

24  **3.      Count VII**

25  Plaintiff alleges that the prison ban on inmate possession of typewriters violates his
26  constitutional rights. Plaintiff claims a violation of his due process rights under the Fifth

27
28

Amendment (#1-1, p. 16).[5]  Plaintiff also claims that the ban on inmate possession of typewriters violates the Equal Protection Clause of the Fourteenth Amendment because inmates at other institutions may possess typewriters.  *Id.* p. 17.  Defendants move for summary judgment on plaintiff's due process, equal protection, and retaliation claims.

### a.    Due Process

As discussed above, a due process claim requires that the plaintiff identify a constitutionally protected liberty interest.  *See* Part II.B.1.b.  Defendants argue that plaintiff has not produced facts to demonstrate that he has a liberty interest in possession and use of a typewriter to litigate his cases (#39, pp. 23-24).

The Due Process Clause itself does not provide for the use and possession of typewriters. Although plaintiff argues that the prison previously allowed inmates to possess typewriters, he provides no state law or prison regulation currently in effect that allows for such possession and use of typewriters.  Even assuming that there was such a policy to allow for the use of typewriters, it does not appear, nor has plaintiff provided any facts to suggest, that deprivation of a typewriter to create typewritten documents in litigation constitutes "an atypical hardship in relation to the normal incidents of prison life."  *See Sandin*, 515 U.S. at 484.

Although plaintiff claims that he has constitutionally protected property interest in his typewriter, the court finds otherwise.  " 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' "  *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  In *Nev. Dep't of Corrs. v. Cohen*, 581 F. Supp. 2d 1085 (9th Cir. 2008), the district court held that the NDOC ban on typewriters, the same ban at issue here, was "reasonably related to legitimate security interests," and that " to the extent prisoners are deprived of their property while in prison, the court finds no violation of due process." *Cohen*, 581 F. Supp. 2d at 1090.  Plaintiff's claim is no different than the prisoner's claim in *Cohen*. Therefore, the court grants summary judgment with respect to plaintiff's due process claim for loss

---

[5]       Plaintiff brings his claim under the Fifth Amendment.  Because plaintiff makes no allegations that defendants are federal actors, the court once again analyzes the claim under the Fourteenth Amendment.

of his typewriter.

#### b.     Equal Protection

As discussed above, a valid claim for equal protection involves either (1) discriminatory treatment based on one's membership in a protected class, or (2) a difference in treatment of similarly situated individuals that bears no rational basis to a legitimate governmental objective. *See* Part II.B.1.c.

Here, defendants note that the ban on possession of typewriters was not restricted to plaintiff or plaintiff's prison, but the ban was prison-wide (#39, p. 24).  They further argue that plaintiff has not shown that he is a member of a protected class or that defendants' action lack a rational basis. Plaintiff alleges that inmates at ESP had access to typewriters, but he does not present, nor can the court find, any such authority which states that inmates in a particular institution may constitute a protected class.  Therefore, summary judgment is proper on this claim.

#### c.     Retaliation

Plaintiff also claims that the ban on typewriters was instituted in retaliation for inmate litigation activities.  As discussed above, a claim for retaliation requires that the plaintiff show that "(1) a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

Here, defendants argue that plaintiff cannot demonstrate any facts as to the second element of causation (#39, p. 24).  Defendants present deposition testimony where plaintiff admits that he does not know why the typewriter ban was implemented (#9-3, p. 11).  Thus, defendants meet their burden in demonstrating an absence of any genuine issue of material fact, and plaintiff fails to come forward with any evidence to dispute this contention.  Therefore, summary judgment should be granted as to this claim.

#### 4.     Count XIII

Plaintiff alleges that his constitutional rights were violated when he was not permitted to enroll in a rehabilitation program (#1-1, p. 26).  Defendants move for summary judgment on

14

plaintiff's due process claim (#39, p. 25).[6]

Defendants assert that inmates have no right to rehabilitative programs and that plaintiff's claims must fail (#39, p. 25). In meeting their burden, defendants argue that plaintiff cannot demonstrate that he has a constitutionally protected interest in enrollment in a rehabilitation program. Even if plaintiff has shown that he was denied entry to a program, he cannot demonstrate that he possessed any constitutionally protected interest in program enrollment. Prisoners do not have a constitutional right to rehabilitation. *See Hoptowit*, 682 F.2d 1237 (explaining prisons do not have a constitutional duty to provide rehabilitative services for inmates serving criminal sentences but that persons committed for mental incapacity do have a constitutional right to adequate rehabilitative treatment (citing *Ohlinger v. Watson*, 652 F.2d 775, 778-79 (9th Cir. 1981)). Plaintiff attests that prior evaluations reveal he has a drug and alcohol problem; however, plaintiff does not declare that he is mentally ill (#1-1, p. 26). Because plaintiff does not provide any facts to demonstrate that his lack of rehabilitation amounts to a constitutionally protected interest, summary judgment is proper on this claim.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes the following:

- that summary judgment should be granted for the defendants as to all claims in counts I,

- that summary judgment should be granted for the defendants as to all claims in count VII;

- that summary judgment be granted for the defendants as the Eighth Amendment claim for deliberate indifference in count III;

- that summary judgment be granted for the defendants as to the Due Process claim in count XIII.

The court respectfully recommends that defendants' motion for partial summary judgment (#39) be **GRANTED**.

---

[6] Plaintiff's factual allegations include that defendants denied him an opportunity to apply for enrollment because of his multiple grievances. These facts may suggest a claim for retaliation. Plaintiff also formulates an Equal Protection claim in that he alleges that he asserts that "similarly situated inmates have been treated differently by the state" (#1-1, p. 26). Defendants, however, do not raise any of these issues in their motion for partial summary judgment, and the court does not rule on them.

The court notes that it has previously dismissed the following claims in its screening order (#9):

        •     All claims in counts IV, V, VI, VIII, X, and XI.

                Therefore, plaintiff's remaining claims are as follows:

        •     All claims within count II, IX, and XII;

        •     Plaintiff's claim under Americans with Disabilities Act in count III;

        •     Plaintiff's Due Process claim in count XIII

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for partial summary judgment (#39) be **GRANTED**.

        **DATED:** April 27, 2010.

_____

**UNITED STATES MAGISTRATE JUDGE**